# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-264 (DWF/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Christopher Michael Jennings, | |
| Defendant. | |

Christopher Michael Jennings, *pro se.*

James S. Alexander and Justin A. Wesley, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Christopher Michael Jennings's ("Jennings") *pro se* motion for compassionate release in light of the COVID-19 pandemic.[1] (Doc. No. 290 ("Motion").) The United States of America (the "Government") opposes Jennings's Motion.[2] (Doc. No. 295.) For the reasons discussed below, the Court respectfully denies Jennings's Motion.[3]

---

[1] The Court also received and considered multiple letters in support of Jennings's release. (*See, e.g.*, Doc. Nos. 303, 308-09.)

[2] The Court also received and considered Jennings's reply to the Government's opposition, and his letter to the Court. (Doc. Nos. 304 ("Reply"); 307 ("Letter").)

[3] In his Reply, Jennings's reiterated his request for appointment of counsel. (Reply at 1; *see also* Doc. No. 302 (denying Jennings's February 3, 2021 request for

## BACKGROUND

On February 1, 2018, Jennings pled guilty to one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Doc. Nos. 146, 148.) On October 29, 2018, this Court sentenced him to 136 months' imprisonment to be followed by a 5-year term of supervised release. (Doc. Nos. 250, 251.)

Jennings is currently incarcerated at Sandstone FCI in Sandstone, MN with an anticipated release date of September 15, 2028. Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited March 3, 2021). Sandstone FCI reports no active COVID-19 cases among its inmates and 6 among its staff, and 700 inmates and 47 staff who have recovered. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 3, 2021). Sadly, one inmate at the facility died from COVID-19. *Id.* To date, the Bureau of Prisons ("BOP") has performed 759 tests for COVID-19 at Sandstone FCI with 671 of them positive for the virus. *Id.*

Jennings, who is 39 years old, now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because he is

---

appointment of counsel).) "[T]here is no general right to counsel in post-conviction habeas proceedings for criminal defendants." *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir. 1999); *Pollard v. Delo*, 28 F.3d 887, 888 (8th Cir. 1994). While the Court respectfully denies Jennings's request, it construes his pleadings liberally as a *pro se* litigant.

obese, has a history of smoking., and was previously infected with COVID-19.[4] (Motion at 1-3, 8; Reply at 3-8, *see also* Doc. Nos. 296 ("Medical Records") at 3, 11, 26, 30, 34, 38; 306 ("Def. Add.") at 10, 12-13).) He also expresses concern about his increased risk of contracting COVID-19 in a prison setting. (Motion at 1, 3-5; Reply at 2-3, 8; *see also* Def. Add. at 1-8.) Jennings argues further that he has extraordinary and compelling family circumstances that warrant his immediate release.[5] (Motion at 3, 8-9; Letter at 1-2.) Jennings concedes that he has not served a large portion of his sentence; however, he contends that release is appropriate because he has committed himself to rehabilitation and because the sentencing factors set forth in 18 U.S.C. § 3553(a) favor release. (Motion at 9-11; Reply at 3-4; *see also* Def. Add. at 9.)

---

[4] The record reflects that Jennings is 5 feet 8 inches tall (Doc. No. 186 ("PSR")) and weighs 215 pounds (Medical Records at 11). Accordingly, his body mass index is 32.7. *See* Centers for Disease Control and Prevention, Adult BMI (Body Mass Index) Calculator, *https://www.cdc.gov/widgets/healthyliving/index.html#bmicalculator* (last visited March 3, 2021).

The record also reflects that Jennings tested positive for COVID-19 on or about December 11, 2020 but was asymptomatic. (Medical Records at 3, 26, 30, 34; *see also* Doc. No. 297 at 2, 13.) Jennings's Medical Records also indicate a "history" of "tobacco products." (Medical Records at 38.)

[5] Jennings specifically contends that his minor son's mother has been incapacitated due to gunshot wounds and that his son has "no other parent to be a primary care-giver." (Motion at 3, 8-9.) In an attachment to his Motion and in his Letter to the Court, Jennings also states that his minor son was shot. (*See* Doc. Nos. 290-1 at 1; Letter at 1.) Jennings expresses remorse that his minor son has suffered since his incarceration and is concerned that his son will follow in his footsteps if he is not released to provide the support and guidance his son needs. (Letter at 1-2.)

Jennings argues more generally that he has a number of children, several of whom have mothers that are unable to provide effective care. (Motion at 8-9.)

3

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[6]

Family circumstances considered "extraordinary and compelling" include: (1) the death or incapacitation of the caregiver of the defendant's minor child or minor children; and (2) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.*, cmt. n.1((C).

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the

---

[6] Although the Statement language permits only the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See, e.g.*, *United States v. Ramirez*, 495 F. Supp. 3d 333, 337 (D. Mass. 2020) (collecting cases and finding that courts have "the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it."); *see also United States v. Walker*, Cr. No. 11-381, 2020 WL 4194677, *2 (D. Minn. June 26, 2020).

4

community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[7] *Id.*

The record reflects that Jennings requested compassionate release from the warden at Sandstone FCI in the fall of 2020 and that it was denied on November 25, 2020.[8] (Doc. No. 290-2 at 7, 15-16.) Accordingly, the Court finds that his Motion is properly before it.

---

[7] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[8] The record reflects that Jennings may have submitted more than one request however his warden did not respond until November 25, 2020. (*See* Doc. No. 290-2 at 4-7, 15.)

After a careful review of Jennings's Motion and other documentation, including his Medical Records, the Court finds that neither his family nor medical circumstances are sufficiently extraordinary and compelling to meet the demanding standard for compassionate release.

While the Court recognizes Jennings's concern for the well-being of his children, particularly his minor son whose mother has allegedly been incapacitated due to gunshot wounds, the Court cannot conclude that Jennings is the only person able to care for the child. Jennings provides no documentation that the child's mother is truly incapacitated. Moreover, it appears that even if the child's mother is incapacitated, the child has a legal guardian who is able to provide care. (*See* Doc. No. 290-2 at 8.) Accordingly, the Court finds that Jennings has failed to meet his burden to show that a sentence reduction is appropriate due to extraordinary and compelling family circumstances.[9]

The Court is aware that Jennings's minor son is struggling and that both Jennings and other family members are concerned about his well-being. The Court also understands Jennings's belief that he is the only person able to provide the care and support the child needs. The Court commends Jennings for his commitment to his family; however, it cannot conclude that his circumstances, as sad as they are, are sufficiently extraordinary and compelling to warrant release.[10]

---

[9] The Court similarly finds that Jennings fails to meet his burden with respect to his assertion that the mothers of his other children are unable to provide appropriate care.

[10] As discussed below, even if the Court did find extraordinary and compelling family circumstances, it would still deny Jennings's request for compassionate release because the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against it.

6

The Court also finds Jennings's medical circumstances insufficiently extraordinary and compelling to warrant release. The Court recognizes that Jennings's body mass index and history of smoking are factors that increase his risk of severe illness from COVID-19.[11] *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 3, 2021) Nevertheless, the Court finds no indication that Jennings's obesity or history of smoking, alone or in combination with the presence of COVID-19 at his facility, diminished or will diminish his ability to provide self-care while in prison. While it is unfortunate that Jennings contracted COVID-19 in December, the record reflects that he received appropriate medical care and appears to have largely recovered.

The Court does not downplay the increased risk of COVID-19 infection in a prison setting and recognizes Jennings's concern that he will be reinfected.[12] It is truly unfortunate that so many inmates at Sandstone FCI contracted the virus. Nevertheless, the Court declines to grant compassionate release based on Jennings's fear of reinfection, particularly after having successfully recovered from the virus once already. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting

---

[11] Recognizing that Jennings is a *pro se* litigation, the Court includes Jennings's use of tobacco in its analysis despite no information on the extent or duration of his use.

[12] The Centers for Disease and Prevention does not recognize prior COVID-19 infection as a risk factor for severe illness should a person contract the virus again. *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 2, 2021).

COVID-19 is an insufficiently extraordinary and compelling reason to warrant release); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same); *see also United States v. Garcia*, Cr. No. 16-333, 2020 WL 4018223, at *2 (D. Minn. July 16, 2020) (declining to grant compassionate release based on possibility of severe reinfection); *United States v. Gentle*, Cr. No.180279, 2020 WL 4018216, at *3 (D. Minn. July 16, 2020) (declining to grant compassionate release when COVID-19 infection did not diminish ability to provide self-care).

Currently there are no cases of COVID-19 among inmates and just 6 among staff at Sandstone FCI. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 3, 2021). Moreover, despite its high infection rate, Sandstone FCI was able to provide effective medical treatment such that all but one inmate who contracted the virus successfully recovered. *Id.* Sandstone FCI also continues to employ measures to mitigate the spread of COVID-19.[13]

---

[13] Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited March 2, 2021). Those steps include limiting visits and internal movement, increased hygiene measures, screening of both staff and inmates and virtual legal visits. *See* Federal Bureau of Prisons, BOP Modified Operations, *https://www.bop.gov/coronavirus/covid19_status.jsp* (last visited March 2, 2021). The BOP periodically updates its Plan and is currently in Phase Nine. Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf* (last visited March 2, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement. Federal Bureau of Prisons, COVID-19: Coronavirus,

The Court also notes that the BOP has currently administered over 61,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it. Federal Bureau of Prisons, COVID-19: Coronavirus, *htttps://www.bop.gov/coronavirus/* (last visited March 1, 2021). Sadly, until the vaccine is more widely available, some level of continued spread is inevitable. In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Jennings did present an extraordinary and compelling reason, release is not appropriate because the § 3553(a) sentencing factors weigh against it. Specifically, the Court cannot overlook the seriousness and recency of Jennings's offense conduct to conclude that such a significant sentence reduction would adequately promote respect for the law or provide a just punishment.[14] (*See, e.g.*, PSR ¶¶ 13-15, 19-21, 22, 26, 30, 37-38 (detailing large scale drug trafficking while possessing firearms.)

---

*https://www.bop.gov/coronavirus/* (last visited March 1, 2021). Since March 2020, the BOP has transferred more than 22,000 inmates to home confinement. *Id.*

[14] While the Court finds that the interests of justice are not served by such a significant reduction of sentence, it commends Jennings for his commitment to his family and for his effort towards rehabilitation. It is clear that Jennings has had a positive impact on a number of individuals, and that his family and friends believe in him.

9

## CONCLUSION

For the reasons set forth above, the Court finds that Jennings fails to present an extraordinary and compelling reason to warrant compassionate release. The Court also finds that release is not appropriate because the § 3553(a) factors weigh against release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Christopher Michael Jennings's *pro se* motion for compassionate release in light of the COVID-19 pandemic (Doc. No. [290]) is respectfully **DENIED**.

Date:  March 4, 2021                                         s/Donovan W. Frank
                                                             DONOVAN W. FRANK
                                                             United States District Judge