# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-264 (DWF/KMM) |
| Respondent-Plaintiff, | Civil No. 21-1035 (DWF) |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Christopher Michael Jennings, | |
| Petitioner-Defendant. | |

## INTRODUCTION

This matter is before the Court on Petitioner-Defendant Christopher Michael Jennings's ("Jennings") *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[1] (Doc. No. 318 ("Motion").) The United States of America (the "Government") opposes Jennings's motion.[2] (Doc. No. 326 ("Govt. Opp.").) For the reasons set forth below, the Court respectfully denies Jennings's Motion.

---

[1] The Court also received and considered Jennings's supporting memorandum. (Doc. No. 319 ("Memo.").) Jennings filed a second memorandum purportedly in support of his Motion (Doc. No. 329 ("Sec. Memo.")); however, the filing argues in support of his prior motions for compassionate release under 18 U.S.C. § 3582. (*See* Sec. Memo.) The Court previously denied both Jennings's motion for compassionate release and his motion for reconsideration of that decision. (Doc. Nos. 311, 314 (together, "Denial").) The Eighth Circuit affirmed this Court's Denial. (Doc. No. 323.) The Court finds the Sec. Memo. an improper attempt to relitigate arguments the Court previously considered and rejected. In any case, it does not relate to or impact the Court's analysis or conclusion with respect to Jennings's Motion under 18 U.S.C. § 2255.

[2] The Government's response was due May 10, 2021. (Doc. No. 324.) Upon no response, the Court inquired of the Government whether a response was forthcoming. On May 24, 2021, the Government simultaneously filed a motion for a time extension and its response. (*See* Doc. Nos. 325, 326.) The Court granted the extension and

## BACKGROUND

On October 18, 2017, a grand jury returned an indictment charging Jennings and three others with various drug trafficking and firearm possession charges.[3] (*See* Doc. No. 1.) The Court appointed Jennings an attorney through whom he reached a plea agreement with the Government. (Doc. No. 148.) On February 1, 2018, Jennings pled guilty to one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Doc. Nos. 146.) In his plea agreement,

---

accepted the Government's response. (Doc. No. 328.) The Court also extended Jennings's deadline to file a reply. (*Id.*) Jennings objects to the Court's order granting the Government a time extension. (Doc. Nos. 331, 332 (together "Objection").) Over his Objection, the Court still finds that the late filing was due to excusable neglect and that an extension was proper. The Court also finds that Jennings did not suffer prejudice from a two-week extension, particularly when his own deadline to reply was extended as well.

Notably, Jennings's reply was due on May 25, 2021. (Doc. No. 328.) Thirteen days after his reply was due, Jennings filed his Opposition, but did not file a reply. Near the end of his Opposition, he states, "once this matter is decided by the court and if granted, Jennings is requesting 21-days to file his reply to the government's response." Even if the Court were to construe this statement buried in his Opposition as a motion for a time extension, Jennings has now had ample time to file any additional reply.

[3]   Jennings's indictment was based in part on the assistance of a confidential reliable informant ("CRI") who tipped off authorities to Jennings's offense conduct and assisted with events that led to his arrest. (*See* Doc. No. 186 ("PSR") (filed under seal) ¶¶ 12-47.) The CRI's initial tip led to a search of Jennings's home on June 21, 2017 which yielded 50.17 grams of heroin, $1,209 cash, and other drug paraphernalia. (*Id.* ¶¶ 17, 21.) Jennings was arrested that day and released on June 23, 2017. (*Id.* ¶ 41.) Upon his release, authorities continued to investigate Jennings upon information and belief that he was involved in a drug conspiracy. (*Id.* ¶¶ 17-40.) The investigation, which lasted through September 2017, established the participants and quantity of drugs involved in the conspiracy. (*Id.*)

While the CRI began working with authorities in 2017, he advised that Jennings had been involved in distributing large amounts of heroin and cocaine as early as 2015. (*Id.* ¶ 13.) Two other informants corroborated that Jennings was distributing large amounts of heroin prior to 2017. (*Id.* ¶¶ 14-15.)

Jennings agreed that "the conspiracy involved the distribution of at least 1 kilogram of heroin between 2016 and 2017," and that the government could prove that fact beyond a reasonable doubt. (Doc. No. 148 ¶ 2). He further agreed that his base offense level should be 30 based on that amount of drugs. (*Id.* ¶ 6(a); *see also* USSG § 2D1.1(c)(5) (setting 30 as the base offense level for offenses involving between 1 and 3 kilograms of heroin)).

At his plea hearing, Jennings testified that he had sufficient time to consult with his attorney, he was satisfied with the services and representation his attorney provided, and that he was not making any claim that he was innocent of the conspiracy to distribute one kilogram or more of heroin. (Doc. No. 269 ("Plea Hr'g Trans.") at 3, 35.) Jennings also testified as to his understanding that by pleading guilty, he waived his rights to bring other challenges to the Government's case, including alleged constitutional violations. (*Id.* at 34.)

Following his guilty plea, and consistent with similarly situated cases, the Court ordered a Presentence Report ("PSR") to be prepared by the United States Probation and Pretrial Services Office. (Doc. No. 146) Based on the quantity of drugs involved in Jennings's offense, the PSR determined that his base offense level was 30. (PSR ¶ 57.) The PSR also recommended a two-level increase because the offense involved a firearm. (*Id.* ¶ 58.) After adjusting for Jennings's acceptance of responsibility, the PSR concluded that Jennings's total offense level was 29 and his criminal history category was VI,

3

resulting in an advisory Guidelines' range of 155-188 months' imprisonment.[4] (*Id.* ¶¶ 64-68, 104, 169.)

Through counsel, Jennings objected to the reliability of information included in the PSR that was provided by the CRI on the ground that the CRI engaged in criminal activity during his period of cooperation; engaged in threatening behavior towards Jennings; was inherently untruthful and unreliable; and was willing "to put his own interest over the truth." (*Id.* at A.1.) Jennings also objected to certain facts pertaining to the two-level enhancement for possessing a firearm in connection with his offense. (*Id.* at A.2.)

At Jennings's sentencing, the Court found that the two-level firearm enhancement applied because it was "not clearly improbable" that Jennings possessed a firearm in connection with the drug trafficking conspiracy from 2016 through September 2017. (Doc. No. 270 ("Sent'g Trans.") at 20.) Accepting the parties' stipulation to a Criminal History Category V, the Court used a Guidelines' range of 140 to 175 months with a mandatory minimum of 120 months. (*Id.*) The Court ultimately imposed a sentence of 136 months' imprisonment to be followed by a 5-year term of supervised release.[5] (Doc. Nos. 250, 251.) The Court observed that the below Guidelines sentence, together with

---

[4]    The parties later agreed that a Criminal History Category VI overstated the seriousness of Jennings's criminal history and moved for a downward departure to Category V. (*See* Doc. Nos. 217, 219.) Notably, the Category V was based in part on Jennings's three prior felony drug convictions. (*See* PSR ¶¶ 81, 86, 88.)

[5]    The 136-month sentence was 15 months below the applicable Guidelines range, and four months below the Guidelines range used by the Court after departing downward.

4

the 5-year term of supervised release, was sufficient but not greater than necessary under the facts of the case.[6]  (Sent'g Trans. at 46-47.)

The Court entered judgment on October 29, 2018 (Doc. No. 251) and Jennings timely appealed, arguing that the Court erred in applying the two-level firearm enhancement against him (Doc. No. 257).  The Eighth Circuit affirmed this Court's judgment on December 17, 2019.[7]  *United States v. Jennings*, 788 F. App'x 409, 410 (8th Cir. 2019).

Jennings filed the instant Motion on April 21, 2021.[8]  He raises two grounds for relief.  He first contends that his attorney provided ineffective assistance of counsel for

---

[6]   The Court also noted the presence of Jennings's supporters in the courtroom and concluded that he was "obviously . . . having an impact on the lives of students, [his] own family, [and] other community members."  (Sent'g Trans. at 41).

[7]   The Eighth Circuit issued a formal mandate on February 21, 2020 after denying Jennings's petition for an *en banc* rehearing on February 13, 2020.  (Doc No. 289.) Jennings did not petition the Supreme Court for further review.

[8]   Section 2255 actions have a one-year limitation period that runs from the latest of the date which:  (1) the judgment of conviction becomes final; (2) the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

In December 2020, Jennings requested a 90-day extension to file a § 2255 action on the ground that he had just learned his conviction was obtained as a result of an alleged constitutional violation.  (Doc. No. 291.)  The Court granted the 90-day extension and gave him until April 26, 2021 to file his motion.  (Doc. No. 299.)  While the Government does not concede that the Court had the authority to extend Jennings's time period to file his motion, it does concede that Jennings's Motion is timely even without the extension.  (Govt. Opp. at 8 n.3 (acknowledging that the one-year time period began

5

failing to argue for a downward departure based on sentencing entrapment and sentencing factor manipulation. (*See* Motion at 5; Memo. at 1-13). He also argues that the Court erred in applying the two-level enhancement for possession of a firearm against him. (Motion at 6.) Jennings also requests an evidentiary hearing. (Motion at 14; Memo. at 13.)

## DISCUSSION

Title 28, United States Code, Section 2255, provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence." In making such a motion, a § 2255 action requires a prisoner to show that he or she is entitled to such extraordinary relief because:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . .

28 U.S.C. § 2255(a). If the court finds such a defect in sentencing, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A § 2255 request for relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

---

to run from the date when Jennings's time to petition the Supreme Court expired—150 days after February 13, 2020 due to COVID-19—thereby allowing Jennings to file his § 2255 action until July 12, 2021).)

6

A defendant may not use a § 2255 petition to relitigate issues that were decided against him on direct appeal, or that could have been raised on direct appeal but were not. *English v. United States*, 998 F.2d 609, 612-13 (8th Cir. 1993); *Thompson v United States,* 7 F.3d 1377, 1379 (8th Cir. 1993); *Reid v. United States*, 976 F.2d 446, 447 (8th Cir. 1992); *Ford v. United States*, 983 F.2d 897, 898-99 (8th Cir. 1993) (per curiam) (claims which could have been raised on direct appeal will not be considered in a section 2255 proceeding absent cause and substantial, actual prejudice).

Every criminal defendant has a constitutional right, guaranteed by the Sixth and Fourteenth Amendments, to effective counsel at trial and sentencing. *Strickland v. Washington*, 466 U.S. 668, 706 (1984); *Wooten v. Norris*, 578 F.3d 767, 781 (8th Cir. 2009). The Eighth Circuit follows the two-part *Strickland* test for reviewing claims of ineffective counsel; to succeed in his claim, Jennings must show that his attorney's performance was unreasonably deficient, and that Jennings "suffered such prejudice from the deficient performance there is a reasonable probability the result would have been different." *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014). To prevail on a claim for ineffective assistance of counsel under § 2255, a defendant must overcome a "heavy burden." *Apfel*, 97 F.3d at 1076.

Careful review of the record before this Court shows that the facts do not support Jennings's claims of ineffective assistance. Jennings claims that his counsel was ineffective for failing to argue that the Government engaged in "sentencing entrapment" or "sentencing factor manipulation" in his defense. (Memo. at 3.) The Court first observes that Jennings waived his right to raise entrapment or manipulation as defenses

7

when he pled guilty and accepted responsibility for conspiring to distribute at least one kilogram of heroin. *United States v. Givens*, 166 F. App'x 257, 258-59 (8th Cir. 2006) (finding that defendant waived his sentence-manipulation or sentence-entrapment argument by pleading guilty.) The Court also notes that Jennings specifically testified that he was satisfied with the services and representation his counsel provided. (Plea Hr'g Trans. at 3.)

Moreover, the Court finds that Jennings has failed to show that there was a reasonable probability that if his counsel had argued for a downward departure based on sentencing entrapment or manipulation, the result would have been different. Specifically, the Court finds that sentencing entrapment and sentencing manipulation are not applicable defenses to the facts of his case.[9] Therefore, Jennings's counsel's failure to raise them does not constitute ineffective assistance. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("Counsel's failure to advance a meritless argument cannot constitute ineffective assistance.").

---

[9]   Even if the defenses were applicable, Jennings provides no evidence that but for his counsel's failure to raise them, he would have elected to go to trial. *Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) (to support a claim of ineffective counsel, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). Any claim to the contrary is contradicted by the substantial benefit Jennings received in pleading guilty. *Id.* ("Judges should look to contemporaneous evidence to substantiate a defendant's expressed preferences."). Without his acceptance of responsibility and other concessions made prior to sentencing, Jennings's Guidelines range at trial would have been significantly higher than the effective Guidelines range of 140-175 months that he actually received. The Court also observes that whether or not the defenses applied, Jennings was bound by a 10-year mandatory minimum, and that his attorney urged the Court to impose the minimum sentence. (*See* Doc. No. 219.)

8

"Sentencing entrapment occurs when official government conduct leads a defendant predisposed to deal only in small quantities of drugs to deal in larger quantities, leading to an increased sentence." *United States v. Ruiz*, 446 F.3d 762, 774 (8th Cir. 2006) (internal citation omitted). To prevail on a sentencing entrapment defense, "a defendant must prove that he had neither the intent nor the ability to deal in the quantity of drugs alleged by the government." *United States v. Warren*, 788 F.3d 805, 813 (8th Cir. 2015). The Court finds this defense inapplicable because Jennings has failed to show that he was predisposed to commit only a minor or lesser offense than the one charged until induced to do so by the CRI, or that he lacked the intent or ability to deal in the quantity of drugs alleged by the government. Indeed, multiple sources corroborated that Jennings was engaged in distributing the same or greater quantities of heroin and cocaine prior to the Government's involvement with the CRI. (*See, e.g.*, PSR ¶¶ 13-15.) Jennings's criminal history, which includes three prior felony drug convictions, also weighs against any claim that he was not predisposed to deal in the quantity of drugs alleged by the government.

"Sentencing manipulation occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increasing the drug quantities for which the defendant is responsible." *United States v. Torres*, 563 F.3d 731, 734 (8th Cir. 2009). It is legitimate, however, "for police to continue to deal with someone with whom they have already engaged in illicit transactions in order to establish that person's guilt beyond a reasonable doubt or to probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist,

and to trace the drug deeper into the distribution hierarchy." *Id.* (quoting *United States v. Shephard*, 4 F.3d 647, 649 (8th Cir. 1993)). "Police may also engage in a legitimate pattern of increasing amounts of drugs in order to determine what quantity of drugs a defendant will deal." *Id.* Therefore, courts "will not find sentencing manipulation when there is evidence of legitimate law enforcement goals and purposes." *United States v. Sacus*, 784 F.3d 1214, 1220 (8th Cir. 2015).

Here, the Court finds no evidence that the Government lacked a legitimate law enforcement purpose when it continued to engage with Jennings after an initial search of his home yielded evidence of drug activity. Moreover, the Government's use of a CRI to probe the extent of Jennings's involvement in a suspected larger conspiracy and to establish his guilt beyond a reasonable doubt was not improper. *Torres*, 563 F.3d at 734. There is simply no evidence that the investigation, which ultimately uncovered a larger conspiracy, was conducted merely to increase Jennings's sentence. *United States v. Calva*, 979 F.2d 119, 123 (8th Cir. 1992) (noting that the government's success in probing the extent of a drug distribution ring showed that it clearly did not engage in sentencing manipulation).

Based on the entirety of the record, the Court simply cannot conclude that Jennings received ineffective counsel. Even if he had not waived his right to asserting the defenses he now raises, Jennings cannot show that his attorney's performance was unreasonably deficient or that he suffered prejudice in any way. *Roundtree*, 751 F.3d at 925.

To the extent Jennings challenges his sentence based on the two-level enhancement for possession of a firearm, the Court notes that Jennings already raised and lost this issue on direct appeal. *See Jennings*, 788 F. App'x at 410. "In the absence of an intervening change in law, or newly discovered evidence, [the Court] will not re-consider any claim that was resolved on direct appeal in a section 2255 habeas proceeding." *English*, 998 F.2d at 613. Here, Jennings presents no change in law or newly discovered evidence to support his challenge. Therefore, the Court finds that his Motion fails on this ground as well.

Based on the record before the Court, there is no reason for the Court to further explore any credibility issues with respect to Jennings's claims. A § 2255 motion can be dismissed without a hearing when: (1) defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). The Court concludes that no evidentiary hearing is required in this case.

Finally, an appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). The Court has considered whether the issuance of a COA is appropriate. In that context, the Court concludes that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432

(1991) (per curiam)).  Jennings has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## CONCLUSION

As set forth above, the Court respectfully denies Jennings's Motion because he has failed to show ineffective assistance and because a § 2255 motion may not be used to relitigate issues already decided on direct appeal.  The Court also concludes that no evidentiary hearing is required, and that Jennings has failed to show that issuance of a certificate of appealability is appropriate.

## ORDER

Based upon the presentations and submissions of the parties, the Court having carefully reviewed the entire procedural history and record in this matter, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that:

1. Defendant Christopher Michael Jennings's *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct (Doc. No. [318]) is respectfully **DENIED**.

2. No evidentiary hearing is required in this matter.

3. No Certificate of Appealability will be issued to Defendant.

4. This matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  August 12, 2021                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge